## JEWELL NURSERY CO. V. STATE.

1. The authority of the board of regents, afterwards directors, of the Agricultural College at Brookings, as defined by Section 4, Chapter 2, Laws of 1893, "to do all things necessary to the successful operation of said school," is subordinate to the right of the legislature to fix a limit by appropriation within which the judgment and authority of such board must be exercised.

2. Such board has no authority by virtue of said section to bind the state by contract to pay money beyond the appropriations provided by the legislature.

3. A principal, with full knowledge of the facts, retaining and enjoying the fruits and benefits of an unauthorized contract, without objection, but with affirmative acts fairly tending to indicate approval, will be held to a ratification of the acts of his agent; even though he would not be required under the circumstances to return the property which was the consideration of such unauthorized contract.

4. Where the board of directors of the Agricultural College contracted with plaintiff to set out trees and shrubbery on its college grounds, the contract on the part of the plaintiff having been fully executed, and all the facts having been reported to the legislature, it passed a bill through its two houses for the payment of the claim, but which bill was vetoed by the executive, on the sole ground of the then depleted condition of the public treasury, no notice of disapproval or disavowal of the acts of the board of directors having been given by the state, *held*, upon demurrer to a complaint, that such facts, fully stated, show a ratification by the state of the acts of such board.

5. Article 13 of the state constitution, together with a corresponding article in the constitution of North Dakota, was designed to divide the

territorial liabilities between the two states of North and South Dakota, and indicate what each state should assume and pay.

6. A claim against the territory of Dakota is valid, and belonging to the class which, by agreement, South Dakota was to pay, may be enforced against the state, although never specifically adjusted between the two states.

(Syllabus by the court. Opinion filed Sept. 5, 1893.)

Action original in this court by the Jewell Nursery Company against the state of South Dakota on a contract. Defendant demurs to the complaint. Demurrer overruled.

*Abbott E. Smith*, for plaintiff.

The decision of the college officers as to what was necessary for the successful operation of the college was conclusive against the territory. Even if the officers had no power to make the contract sued upon, yet the territory of Dakota by accepting the full benefit of the contract with full knowledge of the facts, ratified their action and estopped itself to deny that the contract was that of the territory. Andre v. Commonwealth, 3 Pick. 224; Whitney Arms Co. v. Barlow, 63 N. Y. 70; 5 Field's Lawyer's Briefs, §§ 659, 674, 683, 686; 2 Pars. on Con. 6 Ed. 790; Commonwealth v. Pejepscut, 10 Mass. 154; Nieto's Heirs v. Carpenter, 7 Cal. 527; Railroad v. Railroad, 26 Minn. 31; Opinion of the Court, 49 Mo. 216; Mayor v. Hallett & Walker, 22 Ala. 699; Lindsey v. Hawes, 2 Black, 554; Branson v. Wirth, 17 Wall. 32; Bissell v. City, 24 How, 299; Moran v. Com., 2 Black 725; Pendleton Co. v. Amy, 13 Wall. 297, 305; Leavenworth Co. v. Barnes, 94 U. S. 70; Com. v. January, 94 U. S. 202; Ray Co. v. Vansycle, 96 U. S. 675, 688; Marcy v. Oswego, 92 U. S. 637; Humbolt v. Long, 92 U. S. 642; Meyer v. Muscatine, 1 Wall. 384; VanHostrup v. City, 1 Wall. 291; Weyauwega v. Ayling, 99 U. S. 112; Wilson v. Salamanca, 99 U. S. 504; DeVoss v. City, 18 Va. 338. The plaintiff's claim being a valid one against the territory of Dakota, is binding upon the state of South Dakota.

Previous appropriations to meet claims against the state are not a necessity to a recovery upon the claim; the law authorizing actions against the state negatives the necessity of a previous appropriation. In any event the plaintiff is entitted to a judgment, making the liability of the state a matter of record and preventing this claim from being defeated by the statute of limitations. Higginbotham's Executrix v. Commonwealth, 25 Va. 627; Burroughs. on Pub. Sec. pp. 68, 112, 113, 115; Wheat. Int. Law, p. 48, § 40, and note 18 by Dana.

Robert Dollard, Attorney General, for defendant.

The officers of Brookings College had no power to make the contract sued on. The acts of a public officer who exceeds his authority are not binding upon the government. Curtis v. U. S. 2 Nott & Hun. Ct. 144; Baltimore v. Reynolds. 29 Md. 1; State v. Hastings, 10 Wis. 518; Hall v. Marshall Co., 12 Ia. 142; Gibbins v. U. S., Wall. 269; Filor v. U. S., 9 Wall. 45; Whiteside v. U. S., 93 U. S. 247; Hart v. U. S., 95 U. S. 316; Moffit v. U. S., 112 U. S. 24.

The plaintiff cannot recover for the reason that the liability of the state of South Dakota to pay has never been determined in an adjustment of indebtedness between the states of North and South Dakota as provided by Art. 13 of the state constitution.

KELLAM, J. This is an original action in this court, in which the plaintiff seeks to recover for trees and shrubbery set out and planted upon the grounds of the Agricultural College at Brookings, by the plaintiff, under an alleged contract with the board of directors of said college. The complaint set out the organization of the board under the laws of the territory, the making of the contract, its fulfillment by the plaintiff, its breach by the board and its successors and the state of South Dakota, the division of the territory into the two states of North and South Dakota, and the adoption of the college by the state of South Dakota. The defendant demurs on the

ground that the complaint does not state facts sufficient to constitute a cause of action. The particular grounds relied upon are that the board had no authority to make the contract for future payment, in the absence of an appropriation by the legislature, and that the state's liability to pay has never been determined between the states of North and South Dakota, as provided by Art. 13 of the state constitution.

The first question is important, not so much on account of its effect upon this particular case, as because the answer to it must in a measure determine the authority of other public boards and officers, invested by the legislature with similar powers, to bind the state in the making of contracts. The college was located and established by Chapter 3, Laws 1881, of the territorial legislature. By Chapter 2, Laws of 1883, the college was placed under the direction of a "board of regents," who had "full power to employ a president and all necessary professors and assistants, and prescribe the course of study to be pursued in all the departments of said college, the requisites to graduation, and the degrees to be conferred thereupon, and to do all things necessary to the successful operation of said college." By Chapter 22, Laws 1885, the management of the college was put under the direction of a "board of directors," with the same duties and powers which the abolished board of regents had performed and enjoyed. This was the law in force at the time when this alleged contract was made between the plaintiff and the board of directors. It is claimed by the plaintiff that this board was empowered "to do all things necessary to the successful operation of said school;" that the measure of this authority was to be gauged by their judgment of what was necessary; and that such determination was conclusive. This is too broad a rule by which to measure the authority of public officers as public agents. It must be qualified and controlled by a due consideration of existing and concurrent legislation upon the same subject. The legislature only has the right, and upon it devolves the duty, of providing means from the

public treasury for meeting obligations against the state on account of its public institutions. It does this at each biennial session for the ensuing two years. It is known to be one of its most embarrasing and difficult duties to agree upon the amount of an appropriation for each public institution which shall at once be just to the institution and just to the taxpayers. It is well known that the trying problem which confronts each successive legislature is how to fairly and properly maintain our public institutions without exceeding the probable and expected revenue of the state. Each estimate of needed outlay for the ensuing two years is carefully scanned, and every item not considered strictly necessary is cut out. The legislative judgment controls, and it is exercised with considerable rigor. The authority of the board comes directly from the legislature, and we cannot believe it was intended to invest this board with power to bind the state by contract to make future payments limited as to amount or time only by its own judgment of what was "necessary to the successful operation" of the institution under its immediate supervision. Such power, if recognized and established, would leave the legislature only an auditing committee for the several boards immediately directing the different institutions of the state. The legislature fixes a general limit beyond which the board of directors has no authority to bind the state by contract. Within such limit the board has a discretion in determining what is necessary to the successful operation of the school. When an appropriation is made by the legislature for the coming year, that must be taken by such board and those dealing with it as an authoritive expression of the limit of the state's obligation to pay. If contracts are made in excess of such limit, the legislature, and not the courts, must be appealed to for relief.

Plaintiff contends that the subsequent acts of the board constitutes a ratification of the contract, but it is elementary that what the board had no power to do originally it could not afterwards make valid or binding by attempted ratification. It

is further contended by plaintiff that the state, with full knowledge of all the facts, having retained the fruits of the unauthorized contract, without objection or repudiation, ought in law, as well as in good conscience, to pay for the same; and in this, while the peculiar facts of the case do not leave the question entirely free from doubt, we are inclined to agree with the plaintiff. While the state was under no legal obligation to dig up the trees, and return them to plaintiff, it was incumbent on it to inform plaintiff of its repudiation of the unauthorized acts of the board, and put the plaintiff in position to indemnify itself as far as possible against loss. Instead of doing this, it manifested its acquiescence so far as to pass a bill for the payment of the claim through its two houses of the legislature, which was vetoed by the executive, not on account of his disapproval of final payment, but on account of the then condition of the territorial treasury. Here was an opportunity for the expression of its disapproval. Instead of doing so, it went very far in the opposite direction. While suffering the trees to remain and grow upon the land, where the plaintiffs had planted them without authority, would not alone work a ratification of the acts of the board, still such conduct on the part of the state, after knowledge of the facts, not only without objection, but with positive action in the direction of the adoption of such acts, is inconsistent with its right now to repudiate.

It is further argued by the attorney general that the claim of plaintiff cannot be maintained against the state because it does not appear to have ever been adjusted between the States of North and South Dakota, as provided by Article 13 of the constitution. We do not think this contention is tenable. If it was a valid claim against the territory, it became, upon a division of the territory, a valid claim against either state. This is the settled law in England, and it has been adhered to in this country. Burroughs, Pub. Sec. 68; Higginbotham's Ex'x v. Com., 25 Grat. 627. Article 13 of the state constitution was designed to protect each state against claims against the territory

which, by the terms of the division and settlement, it belonged to the other state to pay. The article was not designed to, and probably could not, affect the rights of creditors of the territory, but was intended as between the two states, to divide the liabilities of the terrtiory, and indicate what portion each state should pay. This claim, if established, should, under the terms of the agreement, be paid by South Dakota. The demurrer to the complaint is overruled, and the defendant given 60 days in which to serve and file answer on the merits, if it shall so desire.